IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BRENDA D. CHARETTE         )
         )
v.                 )      No. 3:12-0105
         )      Judge Nixon/Bryant
SOCIAL SECURITY ADMINISTRATION   )

To:    The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for disability insurance benefits and supplemental security income, as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 12), to which defendant has responded (Docket Entry No. 19). Plaintiff has further filed a reply in support of her motion. (Docket Entry No. 20-1) Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

## I. Introduction

Plaintiff's benefits application was protectively filed on May 8, 2008. (Tr. 131-

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

32, 138-43)  Plaintiff alleged disability since April 27, 2008, due to heart problems, high

blood pressure, high cholesterol, diabetes, acid reflux, ulcers, and hernia.  (Tr. 170)  Her

application was denied at the initial and reconsideration stages of agency review, whereupon

plaintiff requested *de novo* hearing of her claim by an Administrative Law Judge (ALJ).  The

hearing before the ALJ was held on August 17, 2010, and plaintiff appeared with counsel and

gave testimony.  (Tr. 24-57)  Testimony was also given by an impartial vocational expert.  At

the conclusion of the hearing, the ALJ took the matter under advisement until October 4,

2010, when he issued a written decision in which plaintiff was found to be not disabled.  (Tr.

10-19)  That decision contains the following enumerated findings:

1.      The claimant meets the insured status requirements of the Social Security Act
        through December 31, 2010.

2.      The claimant has not engaged in substantial gainful activity since the alleged
        onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.      The claimant has mild lumbar degenerative disc disease with associated back
        pain, atherosclerotic heart disease with a history of stent placement, and
        hypertension, which are considered a "severe" combination of impairments,
        but not severe enough, either singly or in combination, to meet or medically
        equal the requirements set forth in the Listing of Impairments.  Appendix I to
        Subpart P, Regulations No. 4.

4.      After consideration of the entire record, the Administrative Law Judge finds
        that the claimant has the residual functional capacity to lift and carry up to 20
        pounds occasionally and up to 10 pounds frequently; stand or walk up to or
        about six hours in an eight-hour workday with normal breaks; sit up to or
        about six hours in an eight-hour workday with normal breaks; can frequently
        climb, balance, kneel, stoop, crouch and crawl; and should avoid concentrated
        exposure to extreme heat/cold, and pulmonary irritants or poorly ventilated
        workplaces.

5.      The claimant is capable of performing past relevant work (20 CFR 404.1565
        and 416.965).

6.    The claimant has not been under a disability, as defined in the Social Security Act, from April 27, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 12-13, 18-19)

On November 21, 2011, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following review of the record is taken from defendant's brief, Docket Entry No. 19 at 3-6:

On May 1, 2008, Plaintiff visited the Centennial Medical Center Emergency Room with reports of numbness on the left side, cough, throat swelling, anxiety, and chest pain (Tr. 261). Wen T Shiao, M.D., noted that Plaintiff's CAT scan was negative (Tr. 259). An EKG on the same date showed normal sinus rhythm (Tr. 261). Chest x-rays showed no abnormalities (Tr. 274). A chest CT scan showed no pulmonary embolism, a right renal cyst, atherosclerotic calcification and irregularity if the abdominal aorta and no change to mild emphysematous changes in the right upper lobe and small noncalcified soft tissues nodules which were unchanged from a 2006 CT scan (Tr. 272). An exercise study showed reduced left ventrical function and a larger inferolatral wall defect, predominantly fixed (Tr. 275). Gina Chandler, M.D., performed a left heart catheterization, noting that Plaintiff had no significant obstructive disease in the coronary system and recommending a noncardiac workup to explain Plaintiff's chest discomfort (Tr. 269).

On August 1, 2008, Bruce Davis, M.D. conducted a consultative examination at the request of the DDS (Tr. 311-14). Dr. Davis opined that Plaintiff's medical conditions were chronic and that "regular medical maintenance care with weight loss [and] continued cigarette cessation is warranted" (Tr. 314). Dr. Davis also opined that Plaintiff could frequently lift or carry 10 pounds; occasionally lift or carry 10-20 pounds; could stand or walk for up to four hours

during an eight-hour workday; sit for up to eight hours during an eight-hour workday; and was limited in her ability to squat. He also noted that she could tolerate only limited heat and humidity; was limited in her ability to climb or work at heights; and should avoid irritating inhalants (Id.).

Deborah E. Doineau, Ed.D., conducted a consultative examination of the Plaintiff at the request of the DDS on August 15, 2008 (Tr. 315-19). Dr. Doineau characterized Plaintiff's condition as "Generalize[d] Anxiety Disorder" and opined that the condition resulted in no more than mild limitations in functioning (Tr. 318-19).

On September 1, 2008, Plaintiff went to Baptist Hospital with reports of chest pain and painful respiration (Tr. 322.) Images of Plaintiff's chest revealed no acute radiological abnormalities (Tr. 331).

Beginning in December 2008, Plaintiff received treatment at Matthew Walker Comprehensive Health Care (MW) (Tr. 458-512). Throughout her treatment at MW, she was described as having diabetes mellititus without mention of complication and benign essential hypertension (Tr. 458, 461, 465, 467, 469, 472, 474, 476, 479, 483, 485, 477). During her treatment, healthcare providers at MW routinely described Plaintiff as in no apparent distress well nourished, and well developed (459, 463, 466, 468, 470, 473, 478, 484). She was also frequently noted to have a respiratory system that was normal to inspection and lungs clear to auscultation and percussion (Tr. 459, 468, 478).

On February 19, 2009, Plaintiff returned to Baptist Hospital reporting back pain that started after she lifted her mother (Tr. 379, 389). She was diagnosed with radiculopathy and prescribed pain medication (Tr. 382-83).

Beginning in March 2009, Plaintiff sought mental health treatment at Centerstone Community Mental Health Centers (Centerstone) (Tr. 393-409, 414-457). There, Richard Sapp, DMIN, diagnosed Plaintiff with major depressive disorder, single episode, moderate and opined that Plaintiff had a GAF score of 45[2] (Tr. 394, 403, 414). Plaintiff reported lack of sleep; crying spells; insufficient concentration to read a book; and inability to remember

---

[2]A GAF score between 41 and 50 indicates A[s]ome impairment in reality testing or communication (e.g., speech is times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work, school, famly relations, judgment, thinking, or mood. (e.g. depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).@ Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994)(DSM-IV).

what happened yesterday (Tr. 407). Plaintiff denied drug or alcohol use (Tr. 402). Early progress notes reflect that Plaintiff had no suicidal or homicidal ideation; was not threatening harm to others or herself; and no drug or alcohol use was suspected (Tr. 395, 397). Mr. Sapp developed a treatment plan that was to include individual counseling one or two times per month (Tr. 407).[3]

On March 24, 2009, Caroline Harris, MSN, completed a psychiatric evaluation of Plaintiff, that was also signed by and Echo Moore, M.D. (Tr. 416-420). At that time, Plaintiff's thought processes and thought content were normal; her insight and judgment were fair; and her intelligence was average (Tr. 419). Plaintiff had no suicidal or homicidal ideation; was not engaging in self harm; and presented no threat of harm to others (Tr. 419). Ms. Harris also noted that Plaintiff was cannabis dependent, which was confirmed by drug test results (Tr. 420, 424). Sleep medication was prescribed (Id.). On June 29, 2009, Plaintiff confirmed that she used marijuana daily (Tr. 432).

Mr. Sapp noted that Plaintiff had "no problems" with concentration in April or May 2009 (Tr. 443, 445). In May and June 2009, Plaintiff had no suicidal or homicidal ideation; was not engaging in self harm; and presented no threat of harm to others (Tr. 432, 439). Ms. Harris also noted no change in Plaintiff's GAF score (Tr. 441). Plaintiff continued to use marijuana daily (Tr. 432).

On July 16, 2009, Alicia Batson, M.D., noted that Plaintiff reported her "mood on most days is depressed and anxious if [she is] not taking medications" (Tr. 427). Dr. Batson observed that Plaintiff was disheveled and anxious, but had appropriate affect and behavior (Tr. 428). Plaintiff denied visual hallucinations, suicidal ideation, and homicidal ideation; and had normal thought processes and content (Tr. 428). Dr. Batson opined that Plaintiff's intelligence was average, but opined that her insight, judgment, and motivation for treatment were poor (Tr. 429). Dr. Batson noted that Plaintiff had been "smoking cannabis since high school and refuses to consider quitting" (Tr. 430). Dr. Batson also noted that cannabis use was "a likely contributor to current depression and anxiety" (Id.). Dr. Batson adjusted Plaintiff's medications and did not indicate any change in Plaintiff's GAF score (Tr. 429-30).

Centerstone terminated the treatment relationship with Plaintiff on October 20, 2009, due to a lapse in service (Tr. 414). At that time, Mr. Sapp noted that there had been no contact with

---

[3]On March 30, 2009, April 2, 2009, April 14, 2009, April 22, 2009, April 27, 2009, May 28, 2009, May 26, 2009, June 8, 2009, June 23, 2009, July 13, 2009, and July 27, 2009, Plaintiff did not attend her scheduled appointments with Mr. Sapp (Tr. 426, 431, 435-8, 447-8, 451, 454-5).

Plaintiff in 90 days (Id.).

In December 2009, treatment notes from MW specifically note that Plaintiff had "[n]o unusual anxiety or evidence of depression" (Tr. 478, 481). In May 2010, Plaintiff reported anxiety and depression accompanied by insomnia and crying during an appointment at MW (Tr. 485-90). Plaintiff reported moderate anxiety and moderately severe depression (Tr. 488).

Hearing Testimony and Other Evidence

On August 17, 2010, Plaintiff had a hearing before ALJ John Daughtry (Tr. 24). At the time of her administrative hearing, the Plaintiff was 49 years old and had completed the eighth grade. (Tr. 28-29.) She had past work experience as a housekeeper/cleaner, a sandwich maker, photographer, a cook, waitress/hostess, and telemarketer/telephone solicitor (Tr. 18, 47-50).

Testifying as an impartial vocational expert (VE), Melissa Neel testified that, in terms of exertional and skill requirements, Plaintiff's past work was classified as light and unskilled for a housekeeper/cleaner; medium and unskilled a sandwich maker; light and skilled as a photographer; medium and skilled as a cook; light and semi-skilled as a waitress/hostess; and sedentary and semi-skilled as a telemarketer/telephone solicitor (Tr. 18, 47-50).

## III. Conclusions of Law

### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision

must stand if substantial evidence supports the conclusion reached.  Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

## B.  Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 423(d)(3).  In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations.  Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f),

416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff alleges error in the ALJ's failure to consider all of her impairments due to his failure to recognize several diagnosed impairments as medically severe; in his failure to properly evaluate her mental impairment and resulting limitations; in his failure to

properly evaluate her credibility; and, in his failure to consider the functional effects of her obesity.  For the reasons that follow, the undersigned finds no merit in these arguments.

First, plaintiff argues that the ALJ erred at the second step of the sequential evaluation process by failing to find a number of diagnosed impairments "severe," citing the Sixth Circuit's acknowledgment of the step two severity requirement as a de minimis hurdle, as well as the documentation in the record of the more-than-minimal effect on work-related function attributable to these impairments.[4]  However, the ALJ proceeded past the second step of the evaluation process, finding support in the medical record for the existence of a severe combination of impairments, while identifying impairments and symptoms (including diabetes mellitus, chronic obstructive pulmonary disease, neck pain, depression and anxiety) which did not meet the severity threshold.  (Tr. 12-13)  Thus, there is no reversible error at step two, because the inquiry did not terminate at that step with a denial of benefits on the basis of no medically severe impairment, but continued on to a determination in light of plaintiff's residual functional capacity, which took account of "all of the claimant's impairments, including impairments that are not severe" (Tr. 11).  See Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).  Moreover, plaintiff does not point to any medical opinion which identified limitations related to impairments which the ALJ failed to consider, but merely argues that the ALJ failed to appropriately consider the evidence reflecting diagnoses of the various nonsevere impairments.  "[T]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition."  Higgs v.

_____

[4]The impairments at issue are "diabetes mellitus, type II; chronic obstructive pulmonary disease; insomnia; headaches; thoracic or lumbosacral neuritis or radiculitis, unspecified; lumbar radiculopathy; and major depressive disorder, single episode, moderate."  (Docket Entry No. 12-1 at 7)  Plaintiff identifies six pages in the record which support these diagnoses.

Bowen, 880 F.2d 860, 863 (6th Cir. 1988). The undersigned finds no error in this regard.

Plaintiff next argues that the ALJ erred in failing to give appropriate weight to the evidence of plaintiff's diagnosed "major depressive disorder, single episode, moderate," particularly the Clinically Related Group assessment form in which an unknown "rater" from Centerstone Community Mental Health Care Centers ("Centerstone") assigned moderate functional limitations and assessed plaintiff with a score of 45 on the Global Assessment of Functioning scale. (Tr. 404-06) However, the ALJ appropriately discounted the weight of this item because of the conflict "between the limitations assessed, whether narratively or by GAF rating, and the essentially normal mental status examinations." (Tr. 17) Plaintiff had not sought mental health care prior to October 2008, her depression was described as episodic, and she reported that her disorder did not hinder her numerous daily activities (Tr. 318). Moreover, as the ALJ noted, mental health care providers who are not psychiatrists or psychologists, such as Richard Sapp, D.Min. (Doctor of Ministry) -- who assessed the low GAF score at her intake appointment which was then carried forward in the CRG form (Tr. 406) and the notes of her treatment at Centerstone -- are not "acceptable medical sources" under the regulations, but are "'other sources' whose opinions must be considered, but that cannot be given preeminence over well-supported contrary opinions from acceptable medical sources...." (Tr. 16) After a consultative examination, psychologist Dr. Deborah Doineau opined that plaintiff did not have more than mild limitations in any area of mental functioning. During the course of her clinical interview, plaintiff conceded to Dr. Doineau that "sometimes she is depressed but not much," that she was able to get along adequately with co-workers in the past, and that her troubles were primarily related to her physical impairments. (Tr. 17, 317-18) Consequently, substantial evidence supports the

ALJ's decision to consider plaintiff's mental impairments as nonsevere.

Plaintiff next argues that the ALJ erred in discounting her credibility without giving specific reasons for doing so. She further argues that the ALJ erred in citing her financial means to support her drug habit and her frequently missed or canceled mental health appointments as factors detracting from the credibility of her allegations that she cannot afford her prescription medications and that she is severely mentally impaired, respectively. However, it is clear from his decision that the ALJ's primary issue with plaintiff's credibility is the inconsistency between the "consistently unimpressive" objective medical findings and test results, and plaintiff's "frequent complaints of a host of symptoms." (Tr. 14) He further noted a direct conflict between her report to Dr. Doineau that she had not smoked marijuana for years, and her hearing testimony that she smoked every other day. (Tr. 17, 35) Indeed, a note from a Centerstone psychiatrist observes plaintiff's report that she "has been smoking cannabis since high school and refuses to consider quitting" despite advice that it likely contributed to her mental health symptoms (Tr. 430), and that she is "[u]nable to afford medical meds for chronic illness" but smokes cannabis "almost daily." (Tr. 427) The undersigned finds no error in the ALJ's surmise that "if the claimant can afford to regularly use marijuana, she can afford at least some of her medications." (Tr. 18) Plaintiff's argument that this rationale wrongfully presumes that plaintiff buys the marijuana herself rather than receives it as a gift is itself rank speculation, and cannot be deemed sufficient to set aside the substantially supported credibility finding of the ALJ. Furthermore, as discussed above, the ALJ's finding of the nonseverity of plaintiff's mental impairments did not rely upon the missed appointments with her mental health providers, nor is that factor central to the credibility finding.

In short, the undersigned finds that the ALJ's credibility determination, which is due considerable deference on judicial review, e.g., Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003), is well supported and was not arrived at erroneously. Although plaintiff is limited to a range of light work by her physical impairments, the ALJ appropriately found plaintiff to not be limited to the extent she alleged due to the inconsistencies between her subjective complaints on the one hand, and her objective behaviors and manifestly normal physical and mental condition during multiple examinations on the other hand.

Finally, plaintiff argues that the ALJ erred by failing to consider the functional effects of her obesity. However, as the ALJ noted, there was no allegation by plaintiff or testimony at the hearing that her obesity presented any functional problems or exacerbated any limitations attributed to back pain. (Tr. 13) At five feet, two inches tall and 160 pounds, plaintiff was described as "mildly obese," id., and simply does not stand to be limited by her obesity in "perform[ing] routine movement and necessary physical activity within the work environment." Soc. Sec. Rul. 02-1p, "Titles II and XVI: Evaluation of Obesity," 2000 WL 628049, at *6 (S.S.A. Sept. 12, 2002). The undersigned finds no error in the ALJ's consideration of plaintiff's obesity.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 16th day of July, 2014.


s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE